**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,

Plaintiff,

v.

PENN-STAR INSURANCE COMPANY and GRIMMWAY ENTERPRISES, INC. *d/b/a* GRIMMWAY FARMS,

Defendants.

Case No. 1:23-cv-01528-JLT-CDB

ORDER GRANTING NATIONWIDE'S MOTION TO REMAND; DENYING AS MOOT PENN-STAR'S REQUESTS FOR JUDICIAL NOTICE AND MOTION TO DISMISS; AND REMANDING CASE TO KERN COUNTY SUPERIOR COURT

(Docs. 7, 11-1, 19, 28)

In December 2020, the driver of a tractor drove across a road in Kern County. Due to fog, he did not see a truck in his path and broadsided it. The truck's occupants sued the tractor driver, his employer, and the owner of the tractor in Kern County Superior Court. The companies insuring the defendants are now fighting among themselves as to whether they owe the duty to defend or indemnity defendants in the state court action. Nationwide Agribusiness Insurance Company filed an action in Kern County for a declaration of rights and Penn-Star removed it to this Court. Nationwide seeks to remand the action (Doc. 7), and Penn-Star seeks dismissal of the action (Doc. 19).

For the following reasons, the Court **GRANTS** Nationwide's Motion to Remand, (Doc. 7). Penn-Star's Motion to Dismiss, (Doc. 19), and Requests for Judicial Notice, (Docs. 11-1, 28), are **DENIED AS MOOT** and this case is **REMANDED** to superior court.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Underlying Controversy: *Ramirez v. Grimmway*

In December 2020, while driving a tractor, Nereo Penaloza-Herrera collided with a pick-up truck which transported several occupants. (Doc. 1-1 at 17–18; Doc. 1 at 2.) Grimmway Farms owned the tractor and employed Penaloza-Herrera through Torres Farm Labor Contractor. (Doc. 1-1 at 4-5, ¶ 8.)

Torres and Grimmway had entered into a "Farm Labor Contractor Agreement," wherein they agreed to share employment responsibilities as "joint employer[s]." (Doc. 1-1 at 21–22.) The agreement required Torres to "procure and maintain" personal injury and property insurance policies and "name Grimmway as [an] additional insured for the matters and events specifically related to work performed by workers provided by Torres to Grimmway[.]'" (*Id.* at 22.) Torres "agreed to 'forever protect, indemnify, [and] defend with counsel'" all claims sought against Grimmway, unless such claims "aris[e] out of Grimmway's sole negligence." (*Id.*) Torres obtained a commercial general liability insurance policy from Penn-Star, which was in effect at the time of the car accident. (*Id.*; Doc. 20-1 at 2, 4.) The policy personal injuries of up to $1 million per occurrence and $2 million in the aggregate and limited medical costs to $5,000 per person. (*Id.* at 7.) By this time, Nationwide also insured Grimmway through a commercial general liability insurance policy. (Doc. 1-1 at 4-5, ¶ 8.)

#### *i. Initial Insurer Dispute*

Nationwide "demanded that PENN-STAR recognize its obligations as the primary liability insurer for GRIMMWAY," and Penn-Star conditionally agreed. (*Id.* at ¶ 9.) Penn-Star wrote to Grimmway explaining that because Grimmway "is an additional insured" under Penn-Star's policy with Torres, Penn-Star would also defend Grimmway in the *Ramirez* lawsuit. (Doc. 1-1 at 20.) However, Penn-Star reserved its right to disclaim coverage, withdraw its defense, and seek recoupment of incurred defense fees and costs, based in part on the policy's "Auto Exclusion." (*Id.* at 29.) The policy's auto exclusion relieves Penn-Star from covering any claims for bodily injury or property damage that "aris[e] out of the ownership, maintenance, or use by any person or entrustment to others, of any . . . 'auto.'" (Doc. 1-1 at 26.) Excepted from the

exclusion, however, was "mobile equipment," which includes "land vehicles," such as "Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads" as long as this mobile equipment was not as it is not subject to a compulsory or financial responsibility law or other motor vehicle insurance law." *Id*. at 25-26. Penn-Star reserved its right to disclaim coverage, relying on the "Auto Exclusion," stating:

> The pickup truck driven by Kevin Ramirez is an 'auto' as defined in the policy, i.e., 'a land motor vehicle . . . designed for travel on public roads.' We also believe that the tractor driven by Penaloza-Herrera is an 'auto' and not 'mobile equipment' as defined by the policy because it is not one of the types of equipment described under paragraphs f.(2) and f.(3) of the definition of 'mobile equipment,['] and because it is a 'land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.' Penn-Star therefore believes that the auto exclusion applies to Grimmway's alleged liability in the *Ramirez* action.

(Doc. 1-1 at 29.)

A few months later, the Ninth Circuit Court of Appeals issued its decision in *Penn-Star Insurance Company v. Zenith Insurance Company*. No. 21-16930, 2022 WL 17974449 (9th Cir. Dec. 28, 2022), in which the Court interpreted Penn-Star's auto exclusion provision in Penn-Star's favor. *Id.* at *1. Relying on the *Zenith* decision, Penn-Star notified Grimmway that "it declines to further participate in the defense of Grimmway in the *Ramirez* litigation and will withdraw from Grimmway's defense, effective 30 days from the date of this letter." (Doc. 1-1 at 32–33.) Penn-Star then "urge[d] Grimmway to immediately notify any other insurance it may have that is potentially applicable to the *Ramirez* lawsuit." (*Id.*)

B. <u>Current Litigation</u>

After Penn-Star withdrew coverage, Nationwide "had no choice but to step in and provide GRIMMWAY and HERRERA with a defense to the ***Ramirez*** suit, and has been incurring defense fees and costs as a result since approximately June of 2023." (Doc. 1-1 at ¶¶ 11, 21.) Even still, Nationwide contends that Penn-Star is Grimmway and Penaloza-Herrera's primary insurer, and Nationwide is the excess carrier.[1] (*Id.* at ¶ 22.) Nationwide contends that the *Zenith* decision

[1] Nationwide's policy "provides that it will be excess insurance for an insured if there is 'Any other primary insurance available to [Grimmway] covering liability for damages arising out of the premises or operations . . . for which [it] [has] been added as an additional insured." (Doc. 101 at ¶ 14.)

does not determine the coverage question in the underlying lawsuit because the tractor is "mobile equipment" rather than an "auto." (*Id.* at ¶ 20.)

Nationwide filed the instant lawsuit against Penn-Star, Grimmway, and Penaloza-Herrera in Kern County Superior Court. (Doc. 1-1 at ¶¶ 2–4.) Nationwide seeks a declaration that "PENN-STAR's Auto Exclusion does not bar coverage for the ***Ramirez*** suit, and as a result[,]" Penn-Star must defend and indemnify both *Ramirez* defendants "up to the $1 million per occurrence limits for 'bodily injury' in the Penn-Star Policy." (*Id.* at ¶¶ 12, 33–34.) Nationwide also requests a "money judgment according to proof." (*Id.* at 10, ¶ 3.)

Penn-Star removed this action to federal court, pursuant to 28 U.S.C. § 1441(b). (Doc. 1 at 1–2.) In its Notice of Removal, Penn-Star conceded that Grimmway and Penaloza-Herrera were both forum-defendants and that it "did not seek Grimmway's or Herrera's consent before filing this notice removal." (*Id.* at 3–4.) Penn-Star contends, even still, that removal was still proper because: (1) Grimmway and Penaloza-Herrera "should be realigned as plaintiffs for jurisdictional purposes"; and (2) Nationwide fraudulently joined Grimmway and Penaloza-Herrera as defendants to this action. (*Id.* at 4–7.)

Nationwide seeks to have the action remanded. (Doc. 7.) After filing the motion to remand, Nationwide filed a notice of dismissal related to Penaloza Herrera pursuant to Federal Rules of Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Doc. 15.) Penn-Star moves to dismiss the action. (Doc. 19.)

## II. LEGAL STANDARD

### A. Motion to Remand

"The federal removal statute provides that 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed by the defendant . . . to the district court of the United States.'" *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1184 (9th Cir. 2022) (quoting 28 U.S.C. § 1441(a)); *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts [original] jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331, and cases in which the amount in controversy exceeds

$75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019). Thus, a defendant may remove an action to federal court based on diversity jurisdiction. 28 U.S.C. §§ 1441(a), (b). Diversity jurisdiction "requires 'complete diversity' of citizenship, meaning that 'the citizenship of each plaintiff is diverse from the citizenship of each defendant.'" *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1226 (9th Cir. 2019) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). However, independent of § 1332(a)'s requirements, an action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This is known as the "forum defendant rule," and its violation constitutes a "non-jurisdictional defect" and basis for remanding the case. *See Casola v. Dexcom, Inc.*, 98 F.4th 947, 950 (9th Cir. 2024); *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). Ultimately, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas*, 553 F.3d at 1244 (citation omitted). There is a "presumption against removal," and "the defendant always has the burden of establishing that removal is proper." *Id.* (citation and internal quotation marks omitted).

"A motion to remand is the proper procedure for challenging removal." *Id.* (citing 28 U.S.C. § 1447(c)). Under 28 U.S.C. § 1447(c), a plaintiff has "30 days after the filing of the notice of removal" to file a motion to remand an action to state court "on the basis of any defect other than lack of subject matter jurisdiction[.]" For instance, Title 28 U.S.C. § 1446 provides that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). This consent requirement is known as the "defendant unanimity rule" and when violated, serves as "a defect under § 1447(c)," and a basis for remanding the case. *See Atl. Nat'l Tr. LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 938 (9th Cir. 2010); *Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009); *Baiul v. NBC Sports*, 732 F. App'x 529, 531 (9th Cir. 2018).

///

///

## III. DISCUSSION

A. Motion to Remand (Doc. 7)

In its Notice of Removal, Penn-Star acknowledges that "Herrera and Grimmway are citizens of California."[2] (Doc. 1 at 5.) Penn-Star argues that this does not defeat diversity because the Court should realign the parties according to their interests in the litigation: "Herrera and Grimmway plainly share Nationwide's interest in establishing coverage under Penn-Star's policy," and as such "should be realigned as plaintiffs for jurisdictional purposes."[3, 4] (Doc. 1 at 5–6.) Alternatively, Penn-Star argues that both defendants were fraudulently joined because Nationwide alleges no controversy between itself and Penaloza-Herrera or Grimmway. (*Id.* at 6–7; *e.g.*, *Grancare, LLC v. Thrower ex. rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018).)

In the notice of removal, Penn-Star also notes that it "did not seek Grimmway's or Herrera's consent before filing this notice of removal" because Nationwide had not yet served them, and because "neither Herrera nor Grimmway was 'properly joined' as a defendant to this action." (*Id.* at 4.)

*i. Realignment of the Parties*

"Although the plaintiff is generally the master of his complaint, diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008) (internal quotation marks and citation omitted); *see also Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1157 (9th Cir. 2012) ("A complaint's alignment of the parties is not binding on the courts.") (internal quotation marks and citation omitted). "Instead, a court must realign the parties in order to protect our judgments against artful pleading and ensure an actual 'collision of

[2] Nationwide dismissed Penaloza-Herrera after Nationwide removed this case to federal court. (Doc. 15.) This has no legal effect on whether removal was proper. *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) ("We have long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined *solely on the basis of the pleadings filed in state court*.") (emphasis added) (citations omitted).

[3] Nationwide is a citizen of Iowa, and Penn-Star is a citizen of Pennsylvania. (Doc. 1 at 5; Doc. 1-1 at 4, ¶¶ 1–2.)

[4] The Court declines to address Penn-Star's argument that Nationwide's waived its opposition to the issue of realigning the parties, (Doc. 11 at 13), because the Court is obligated to align the parties according to their interests. *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1157 (9th Cir. 2012); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008); (Doc. 1 at 5; Doc. 11 at 13–15.)

interest.'" *Digimarc Corp.*, 549 F.3d at 1234 (citation omitted); *Scotts*, 688 F.3d at 1157. The Court configures the "collision of interest" in a suit by first, determining the "principal purpose of the suit," *Digimarc Corp.*, 549 F.3d at 1234 (internal quotation marks and citation omitted), which touches on the "primary matter in dispute." *Scotts*, 688 F.3d at 1157 (internal quotation marks and citation omitted). "When considering the primary purpose of a federal case in a realignment inquiry, a court may not consider claims made in a different case." *Scotts*, 688 F.3d at 1157.

Once the Court determines the primary matter in dispute, the Court realigns the parties "according to their ultimate interests, whether the realignment has the effect of conferring or denying subject matter jurisdiction on the court." *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1133 (9th Cir. 2006) (en banc) (citations omitted); *see also Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 872–73 (9th Cir. 2000) (the Court must "look beyond the pleadings to the actual interests of the parties respecting the subject matter of the lawsuit," and "align for jurisdictional purposes those parties whose interests coincide respecting the primary matter in dispute.") (internal quotation marks and citations omitted). "If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983) (citation omitted).

a. <u>Principal Purpose of Lawsuit</u>

In its Notice of Removal, Penn-Star suggests that the primary purpose of this lawsuit is "whether, as Nationwide claims, Penn-Star's policy affords coverage for the *Ramirez* lawsuit." (Doc. 1 at 6; *see also* Opp'n, Doc. 11 at 14.) Penn-Star requests the Court realign Penaloza-Herrera and Grimmway as plaintiffs in this case because, in Penn-Star's view, these defendants' interests more appropriately align with Nationwide's interests:

> If Nationwide loses, Penn-Star will be adjudged to owe nothing such that Herrera's and Grimmway's only protection against personal liability to the ***Ramirez*** plaintiffs will [be] the $1 million indemnity limit afforded by Nationwide's policy. (See Compl., ¶ 13.) If, on the other hand, Nationwide wins and Penn-Star is adjudged to cover the ***Ramirez*** claims, Grimmway and Herrera will potentially have up to $2 million in combined liability coverage from Penn-

Star and Nationwide.

(Doc. 1 at 6 (emphases in original); *see also* Opp'n, Doc. 11 at 14, 15 ("*Of course* Grimmway and Herrera would prefer $2 million in liability coverage instead of $1 million. Their interest is an unconditional Nationwide victory.") (emphasis in original).)

In *Continental Airlines, Inc. v. Goodyear Tire & Rubber Company*, 819 F.2d 1519, 1523–1524 (9th Cir. 1987), the Ninth Circuit acknowledged that though disputes between co-defendants may exist if liability is imposed, these disputes are "ancillary" to the "essential controversy," which was whether the plaintiff could recover against them at all. *Id.* The same logic applies to the instant matter. This determination is supported by *United States Fidelity and Guaranty Company v. A & S Manufacturing Company, Incorporated*. 48 F.3d 131 (4th Cir. 1995). In that case, A & S Manufacturing Company contracted with three different insurers, including U.S. Fidelity, for primary liability insurance. *Id.* at 132. After A & S called upon its three insurers "for defense and indemnity," U.S. Fidelity filed a federal action against A & S and the other two insurance companies, seeking "a declaration of the parties' rights and duties as they relate to A & S's claims for insurance coverage for environmental liabilities" *Id.*

The Fourth Circuit affirmed the district court's realignment of the insurers as plaintiffs and A & S as the sole defendant. The Court applied the Ninth Circuit's "principal purpose test" and rejected U.S. Fidelity's insistence that "its principal purpose in bringing the suit was to resolve its obligations and rights with respect to A & S," and its co-insurers. *United States Fidelity*, 48 F.3d at 132–134. The Fourth Circuit affirmed the conclusion that "the primary issue in the case was whether the insurers owe A & S a duty to defend . . . and a duty to indemnify for any liability assessed against A & S. . . . any disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify." *Id.*

The Sixth and Third Circuits have framed the primary issue in the same way in nearly identical circumstances to the instant matter. *See U.S. Fid. and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) ("USF & G brought this action seeking a declaratory judgment of the obligations of the various insurers in order to receive contribution from those insurers who shared an obligation with USF & G to the insured parties. USF & G's request for

contribution is adverse to the interests of the insurers . . . however, [ ] the primary issue in this case is whether the insurers have a duty to indemnify any of the Thomas Parties."); *Emp'ers Ins. of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862, 864–65, 866 (3d Cir. 1991) ("The district court described the principal issue in this case as simply whether the insurers have obligations to defend and indemnify Crown. [Citation.] Despite the different theories advanced by the insurers, they are joined in their common goal of avoiding obligations to Crown . . . they are united in their position that Crown, the insured, should not be able to recover on its insurance policies for its obligation with respect to the environmental cleanups.").

Other courts within this Circuit, including this District, have analyzed the principal purpose in similar circumstances. *See Ace Prop. and Cas. Ins. Co. v. McKesson Corp.*, 2021 WL 908350, at *6 (N.D. Cal. Mar. 10, 2021) ("ACE seeks a declaration of the Insurer Defendants' obligations, 'if any,' to defend or indemnify McKesson[.] . . . The 'primary dispute' is ACE's duties to McKesson, and the Insurer Defendants' obligation, '*if any*,' are predicated on '*the extent* [to which] the court determines that ACE has any [coverage] obligations' to McKesson.") (emphases in original); *Am. Econ. Ins. Co. v. Aspen Way Enters., Inc.*, No. CV 14-09-BLG-SPW, 2014 WL 7461712, at *3 (D. Mont. Dec. 2, 2014) ("Also as in *A & S Mfg.*, the Plaintiff-Insurers' principal purpose of this lawsuit is avoiding liability to Aspen Way under their insurance contracts."); *see also Tres Cruzes Land & Cattle, LLC v. Scottsdale Ins. Co.*, No. 2:15-cv-00449-MCE-DAD, 2015 WL 6949888, at *5 (E.D. Cal. Nov. 10, 2015) ("[T]he primary dispute in both the Tres Cruzes and Trustee lawsuits is to obtain proceeds payable under the Scottsdale policy as well as damages flowing from Scottsdale's failure to pay such damages sooner.").

Nationwide frames the principal purpose of this lawsuit as one seeking a "judicial determination and declaration of rights, obligations and interests" regarding Nationwide and Penn-Star's "obligation[s] to GRIMMWAY [and HERRERA] in the ***Ramirez*** suit . . . and which insurer owes a duty to defend" them in *Ramirez*. (Doc. 1-1 at 9–10, ¶¶ 1–2). Both Penn-Star and Nationwide deny that they are obligated to defend the parties in the *Ramirez* action. Penn-Star denies all liability, and Nationwide denies liability until after the first $1 million is expended in indemnity. (Doc. 13 at 5)

Though Nationwide and Penn-Star dispute the application of Penn-Star's "Auto Exclusion," and Nationwide seeks to require Penn-Star to provide the first layer of insurance, these internal disputes are merely ancillary to the principal dispute in this case. The primary issue is whether the insurers owe a duty to defend and indemnify Grimmway and Penaloza-Herrera. *Cf. U.S. Fidelity*, 48 F.3d at 134 ("If none, or only one, provided coverage, the question of the insurers' liability to each other would be moot. Only if two or more were liable to A & S, would the court have to allocate liability and costs."); *Emp'ers Ins.*, 942 F.2d at 866.

b. Coinciding Interests

Penn-Star asks the Court to realign Penaloza-Herrera and Grimmway as co-plaintiffs with Nationwide because each defendant would rather be covered by both insurer's policy limits. (Doc. 1 at 6; Doc. 11 at 14, 15.) This theory misses the mark, because it focuses on the policy limits rather than the duties to the insureds. Moreover, the amount of each insurer's policy limits is not yet pertinent—it is simply "hypothetical until the insurers' liability is determined." *U.S. Fidelity*, 48 F.3d at 134; *Ace Prop. and Cas.*, 2021 WL 908350, at *6. In any event, "[r]ealignment may be required even if a diversity of interests exists on other issues," *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983), and "the fact that one defendant may benefit should plaintiff prevail against another defendant is not in and of itself sufficient to sustain realignment." *BDC Dev. Corp. v. N. Am. Capacity Ins. Co.*, No. CV 13-2170 FMO (FFMx), 2013 WL 12146122, at *2 (C.D. Cal. Aug. 20, 2013) (internal quotation marks and citation omitted).

Because "[t]he dispute among the insurers is secondary to whether the insurers are liable to [Grimmway and Penaloza-Herrera] and is hypothetical until the insurers' liability is determined," and because the "insurers share the primary goal of avoiding obligations to" these insureds, the Court realigns Nationwide and Penn-Star as plaintiffs, opposite to Grimmway and Penaloza-Herrera as defendants. *U.S. Fidelity*, 48 F.3d at 134; *see also id.* ("[A]ny disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify."); *Ace Prop. and Cas.*, 2021 WL 908350, at *6; *Tres Cruzes*, 2015 WL 6949888, at *5; *Am. Econ. Ins.*, 2014 WL 7461712, at *3; 13E Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 3607 (3d ed. 2024) ("A common fact pattern in recent cases has been a suit by an insurance company for a declaratory judgment in which its insured and other insurers with policies covering the insured are named as defendants. . . . When [the principal purpose] test is used[,] the insurers are aligned as plaintiffs[.]"). Accordingly, for purposes of the analysis of the Court's jurisdiction, the Court declines to realign Grimmway and Penaloza-Herrera Penn-Star as plaintiffs in this case. (Doc. 1-1 at ¶¶ 1–4.)

*ii. Properly Served*

In its Notice of Removal, Penn-Star represented that Nationwide "formally served Penn-Star on October 24, 2023, but has not served the other defendants, Grimmway and Herrera." (Doc. 1 at 4.) Thus, in Nationwide's view, its former co-defendants were neither properly "joined" nor "served," making its removal defects immaterial. Nationwide contends that it "served Grimmway with a summons and complaint on October 16, 2023." (Doc. 7 at 7 (citing Doc. 5).) Penn-Star's Opposition does not dispute that Nationwide served Grimmway, and merely states that Nationwide's service of Grimmway was "unknown at the time to Penn-Star or its counsel[.]" (Doc. 11 at 18.) With this argument conceded, the Court need not conduct an evidentiary review of Grimmway's service. *See, e.g., DeFiore v. SOC LLC*, 85 F.4th 546, 552–53 (9th Cir. 2023). The Court deems Grimmway properly served for the purposes of this motion and the removal without consent was improper.

*iii. Fraudulent Joinder*

The parties dispute whether Penaloza-Herrera and Grimmway are fraudulently joined. Penn-Star argues in the affirmative, stating that "[t]he complaint alleges no controversy as between Herrera or Grimmway on the one hand and Nationwide on the other." (Doc. 1 at 6.) In Penn-Star's view, Nationwide "is not contesting coverage for Herrera and Grimmway under its own policy—it concedes such coverage exists—but rather [is] trying to shield its insurance proceeds by shifting primary responsibility for Herrera's and Grimmway's liability to Penn-Star as an ostensible primary insurer." (*Id.* at 7.)

Nationwide disagrees with this case construct. Nationwide represents that it "is asking the Court to declare that it has no obligation to defend either against the ***Ramirez*** suit, and no

obligation to indemnify either except on an excess basis." (Doc. 7 at 8.) As such, Nationwide protests that "both Mr. Herrera and Grimmway are directedly [sic] impacted by the declarations sought and proper defendants to those causes of action," even if not explicitly stated in Nationwide's complaint, and moreover, that Penn-Star has failed to show "that there is no possibility that Kern County Superior Court would permit Nationwide to amend its complaint to state a valid cause of action against Grimmway and/or Mr. Herrera." (*Id.* at 8–9.)

"There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower ex. rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal quotation marks and citation omitted). "Fraudulent joinder is established the second way if a defendant shows that an individual joined in the action cannot be liable on any theory." *Id.* (cleaned up) (internal quotation marks and citation omitted). "But if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (emphasis in original) (internal quotation marks and citation omitted). Importantly, Penn-Star "bears a heavy burden" to show jurisdiction based on this theory, as "there is a general presumption against finding fraudulent joinder." *Id.* (cleaned up) (internal quotation marks and citation omitted). "If a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent inquiry does not end there"—instead, "the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.*

Despite Penn-Star's view of the case, Nationwide's complaint contests coverage for both Penaloza-Herrera and Grimmway under its own policy. *Grancare*, 889 F.3d at 549; Doc. 1-1 at ¶¶ 11 ("NATIONWIDE had no choice but to step in and provide" a defense to Grimmway and Penaloza-Herrera), 12 (requesting declaration that "Auto Exclusion" does not bar coverage, that Penn-Star "is obligated to defend GRIMMWAY and HERRERA in the ***Ramirez*** suit," and that "PENN-STAR and not NATIONWIDE must indemnify GRIMMWY [sic] and HERRERA"). That Nationwide concedes it is an excess insurer, (Ex. 1, Doc. 1-1 at ¶ 22), does not undermine its position that it does not believe it is obligated to defend and indemnify Grimmway or Penaloza-

Herrera, except to the extent that the underlying lawsuit reaches the excess level. (*Id.*)

Though Nationwide has brought its requests for declaratory relief against Penn-Star alone (*Id.* at 8–9), this does not make Nationwide's complaint against Penaloza-Herrera and Grimmway "wholly insubstantial and frivolous." *Grancare*, 889 F.3d at 549 (internal quotation marks and citation omitted). Grimmway and Penaloza-Herrera both have made claims for coverage under the insurance contracts issued by Nationwide and Penn-Star, *United Comput. Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002), and it is common for insurers to sue their insureds in a declaratory relief action to determine coverage. *See, e.g., Royal Indem. Co. v. United Enters., Inc.*, 162 Cal. App. 4th 194 (Cal. Ct. App. 2008).

Because Grimmway and Penaloza-Herrera both claim to be covered by the policies at issue and have an interest in the outcome of any litigation that has at issue whether they are entitled to coverage, the Court does not find that they are fraudulently joined in this action. Accordingly, the Court concludes that at least Grimmway was properly served and joined in this case. Penn-Star violated both the forum defendant rule and the defendant unanimity rule in removing a case with a properly joined resident defendant, and in removing this case without seeking Grimmway's consent. Thus, the motion to remand is **GRANTED**. (Doc. 7)

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS**:

(1) Nationwide's Motion to Remand (Doc. 7) is **GRANTED**. Penn-Star's Requests for Judicial Notice (Docs. 11-1, 28), and Penn-Star's Motion to Dismiss (Doc. 19) are **DENIED AS MOOT**.

(2) This case is **REMANDED** to Kern County Superior Court (Case No. BCV-23-103412).

IT IS SO ORDERED.

Dated: **September 25, 2024**

UNITED STATES DISTRICT JUDGE