**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,

Plaintiff,

v.

PENN-STAR INSURANCE COMPANY and GRIMMWAY ENTERPRISES, INC. *d/b/a* GRIMMWAY FARMS,

Defendants.

Case No. 1:23-cv-01528 JLT CDB

ORDER DENYING NATIONWIDE'S SECOND MOTION TO REMAND; AND REALIGNING PARTIES

(Doc. 34)

## I. INTRODUCTION

In December 2020, the driver of a tractor drove across a road in Kern County. Due to fog, he did not see a truck in his path and broadsided it. The truck's occupants sued the tractor driver, his employer, and the owner of the tractor in Kern County Superior Court (the "*Ramirez* Action"). (*See* Doc. 1-1 at 12–18.) The companies insuring the defendants began fighting among themselves as to whether they owed the primary duty to defend or indemnity defendants in the state court action. On October 11, 2023, Nationwide Agribusiness Insurance Company filed a separate action in Kern County for a declaration of rights. (*Id*. at 3–10.) Penn-Star removed the action to this Court, arguing that complete diversity exists because: (1) the driver (Mr. Nereo Penaloza-Herrera) and his employer (Grimmway Farms) should be re-aligned from their status as

defendants to plaintiffs; and/or (2) Mr. Herrera and Grimmway were fraudulently joined. (Doc. 1 at 5–7; Doc. 7.) On September 26, 2024, this Court granted Nationwide's motion to remand, finding the requested realignment would be inappropriate, that instead the two insurers should be aligned as plaintiffs against the two insured, and that no party had been fraudulently joined. (Doc. 30); *Nationwide Agribusiness Ins. Co. v. Penn-Star Ins. Co*., No. 1:23-CV-01528-JLT-CDB, 2024 WL 4307795, at *1 (E.D. Cal. Sept. 26, 2024)[1]

The case proceeded in state court for several months, until on May 28, 2025, Penn-Star removed the case once again, claiming that evidence it obtained during discovery in state court demonstrates "bad faith" required to remove more than one year after the lawsuit was initiated under 28 U.S.C. § 1446(c)(1), and likewise provides a justification for the realignment Penn-Star originally requested and/or for a finding of fraudulent joinder. (Doc. 31.) Nationwide once again moved to remand. (Doc. 34.) The parties have thoroughly papered the motion, including filing a sur-reply and response thereto. (Docs. 39, 40, 41, 45, 46.) In addition, while the motion was pending, the *Ramirez* Action settled (Doc. 51), so the Court requested supplemental briefing regarding the impact of that settlement on any realignment (Doc. 57), and the parties have filed those briefs. (Docs. 61, 62.) Having considered the entire record, the Court finds bad faith, denies the motion to remand, and realigns the parties as Penn-Star requests.

## II. STANDARDS OF DECISION

### A. Removal and Remand

"The federal removal statute provides that 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed by the defendant . . . to the district court of the United States.'" *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1184 (9th Cir. 2022) (quoting 28 U.S.C. § 1441(a)). "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts [original] jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019). Thus, a defendant may remove an action to

[1] Mr. Herrera was dismissed from this action in January 2024. (Doc. 15.)

federal court based on diversity jurisdiction. 28 U.S.C. §§ 1441(a), (b). Diversity jurisdiction "requires 'complete diversity' of citizenship, meaning that 'the citizenship of each plaintiff is diverse from the citizenship of each defendant.'" *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1226 (9th Cir. 2019) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). However, independent of § 1332(a)'s requirements, an action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This is known as the "forum defendant rule," and its violation constitutes a "non-jurisdictional defect" and basis for remanding the case. *See Casola v. Dexcom, Inc.*, 98 F.4th 947, 950 (9th Cir. 2024); *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). Ultimately, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citation omitted). There is a "presumption against removal," and "the defendant always has the burden of establishing that removal is proper." *Id.* (citation and internal quotation marks omitted).

"A motion to remand is the proper procedure for challenging removal." *Id.* (citing 28 U.S.C. § 1447(c)). Under 28 U.S.C. § 1447(c), a plaintiff has "30 days after the filing of the notice of removal" to file a motion to remand an action to state court "on the basis of any defect other than lack of subject matter jurisdiction[.]" Here, Nationwide contends that Penn-Star's second removal was untimely. (Doc. 34 at 6.) Because this case was initiated in 2023, 28 U.S.C. § 1446(c)(1) ordinarily would bar this removal, as it was taken "more than 1 year after commencement of the action." However, there is an exception to the 1-year deadline where "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id*. The bad faith exception is discussed in greater detail below.

**B. Realignment**

"Although the plaintiff is generally the master of his complaint, diversity jurisdiction cannot be conferred upon the federal courts by the parties 'own determination of who are plaintiffs and who defendants." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008) (internal quotation marks and citation omitted); *see also Scotts Co. LLC v. Seeds, Inc.*,

688 F.3d 1154, 1157 (9th Cir. 2012) ("A complaint's alignment of the parties is not binding on the courts.") (internal quotation marks and citation omitted). Instead, the Court must realign the parties "to protect our judgments against artful pleading and ensure an actual 'collision of interest.'" *Digimarc Corp.*, 549 F.3d at 1234 (citation omitted); *Scotts*, 688 F.3d at 1157. The Court configures the "collision of interest" in a suit by first, determining the "principal purpose of the suit," *Digimarc Corp.*, 549 F.3d at 1234 (internal quotation marks and citation omitted), which touches on the "primary matter in dispute." *Scotts*, 688 F.3d at 1157 (internal quotation marks and citation omitted). "When considering the primary purpose of a federal case in a realignment inquiry, a court may not consider claims made in a different case." *Id.*

Once the Court determines the primary matter in dispute, the Court realigns the parties "according to their ultimate interests, whether the realignment has the effect of conferring or denying subject matter jurisdiction on the court." *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1133 (9th Cir. 2006) (en banc) (citations omitted); *see also Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 872–73 (9th Cir. 2000) (the Court must "look beyond the pleadings to the actual interests of the parties respecting the subject matter of the lawsuit," and "align for jurisdictional purposes those parties whose interests coincide respecting the primary matter in dispute.") (internal quotation marks and citations omitted). "If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983) (citation omitted).

## III. FACTUAL BACKGROUND

### A. The *Ramirez* Action

In December 2020, while driving a tractor, Mr. Penaloza-Herrera collided with a pick-up truck which transported several occupants. (Doc. 1-1 at 17–18; Doc. 1 at 2.) Grimmway Farms owned the tractor and employed Penaloza-Herrera through Torres Farm Labor Contractor. (Doc. 1-1, ¶ 8.)

Pursuant to a "Farm Labor Contractor Agreement," Torres and Grimmway agreed to share employment responsibilities as "joint employer[s]." (Doc. 1-1 at 21–22.) The agreement required

Torres to "procure and maintain" personal injury and property insurance policies and "name Grimmway as [an] additional insured for the matters and events specifically related to work performed by workers provided by Torres to Grimmway[.]'" (*Id.* at 22.) Torres "agreed to 'forever protect, indemnify, [and] defend with counsel'" all claims sought against Grimmway, unless such claims "aris[e] out of Grimmway's sole negligence." (*Id.*) Torres obtained a commercial general liability insurance policy from Penn-Star, which was in effect at the time of the car accident. (*Id.*; Doc. 20-1 at 2, 4.) The Penn-Star policy covered personal injuries of up to $1 million per occurrence and $2 million in the aggregate. (*Id.* at 7.)

At all relevant times, Nationwide also insured Grimmway through a commercial general liability insurance policy. (Doc. 1-1, ¶ 8.) The Nationwide policy had a liability limit for "bodily injury" of $1 million per occurrence. (*Id.*, ¶ 13.) The Nationwide Policy contains an "Other Insurance" provision that states Nationwide will be excess insurance for an insured if there is "Any other primary insurance available to you covering liability for damages arising out of the premises or operations… for which you have been added as an additional insured." (*Id.*, ¶ 14.)

**B. Pre-Litigation Insurer Dispute**

Nationwide "demanded that PENN-STAR recognize its obligations as the primary liability insurer for GRIMMWAY," and Penn-Star conditionally agreed. (*Id.*, ¶ 9.) Penn-Star wrote to Grimmway explaining that because Grimmway "is an additional insured" under Penn-Star's policy with Torres, Penn-Star would also defend Grimmway in the *Ramirez* lawsuit. (Doc. 1-1 at 20.) However, Penn-Star reserved its right to disclaim coverage, withdraw its defense, and seek recoupment of incurred defense fees and costs, based in part on the policy's "Auto Exclusion." (*Id.* at 29.) That exclusion relieves Penn-Star of covering any claims for bodily injury or property damage that "aris[e] out of the ownership, maintenance, or use by any person or entrustment to others, of any . . . 'auto.'" (Doc. 1-1 at 26.) Excepted from the exclusion, however, was "mobile equipment," which includes "land vehicles," such as "Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads" as long as this mobile equipment was not "subject to a compulsory or financial responsibility law or other motor vehicle insurance law." (*Id.* at 25-26.) Penn-Star specifically reserved its right to disclaim coverage,

relying on the "Auto Exclusion," stating:

> The pickup truck driven by Kevin Ramirez is an "auto" as defined in the policy, i.e., "a land motor vehicle . . . designed for travel on public roads." We also believe that the tractor driven by Penaloza-Herrera is an "auto" and not "mobile equipment" as defined by the policy because it is not one of the types of equipment described under paragraphs f.(2) and f.(3) of the definition of "mobile equipment,["] and because it is a "land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." Penn-Star therefore believes that the auto exclusion applies to Grimmway's alleged liability in the *Ramirez* action.

(Doc. 1-1 at 29.)

In addition, though the Penn-Star policy generally acknowledged that it provided "primary" coverage, the policy contained its own "other insurance" exception as follows:

> Excess Insurance
>
> This insurance is excess over
>
> ***
>
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations for which you have been added as an additional insured.

(Doc. 1-1 at 28.)

A few months later, the Ninth Circuit Court of Appeals issued its decision in *Penn-Star Insurance Company v. Zenith Insurance Company*. No. 21-16930, 2022 WL 17974449 (9th Cir. Dec. 28, 2022), in which the Court interpreted Penn-Star's auto exclusion provision to exclude coverage for an accident between a piece of farm equipment owned by the insured and an automobile owned by a third party. *Id.* at *1 (finding that the involved "Toyota Camry clearly qualifies as 'any . . . auto' 'use[d] by any person,'" but noting that the parties did not dispute "that the collision between the Camry and the tractor 'ar[ose] out of' the use of the Camry"). Relying on *Zenith*, Penn-Star notified Grimmway that "it declines to further participate in the defense of Grimmway in the *Ramirez* litigation and will withdraw from Grimmway's defense, effective 30 days from the date of this letter." (Doc. 1-1 at 32–33.) Penn-Star then "urge[d] Grimmway to immediately notify any other insurance it may have that is potentially applicable to the *Ramirez*

lawsuit." (*Id.*)

**C. Nationwide's Lawsuit, Penn-Star's Initial Removal, and Remand.**

After Penn-Star withdrew coverage, Nationwide "had no choice but to step in and provide GRIMMWAY and HERRERA with a defense to the *Ramirez* suit, and has been incurring defense fees and costs as a result since approximately June of 2023." (Doc. 1-1 at ¶¶ 11, 21.) Even still, Nationwide contends that Penn-Star is Grimmway and Penaloza-Herrera's primary insurer, and Nationwide is the excess carrier. (*Id.* at ¶ 22.) Nationwide contends that the *Zenith* decision does not determine the coverage question in the underlying lawsuit because the tractor is "mobile equipment" rather than an "auto." (*Id.* at ¶ 20.)

Nationwide filed the instant lawsuit against Penn-Star, Grimmway, and Penaloza-Herrera in Kern County Superior Court. (Doc. 1-1 at ¶¶ 2–4.) Nationwide seeks a declaration that "PENN-STAR's Auto Exclusion does not bar coverage for the *Ramirez* suit, and as a result[,]" Penn-Star must defend and indemnify both *Ramirez* defendants "up to the $1 million per occurrence limits for 'bodily injury' in the Penn-Star Policy." (*Id.* at ¶¶ 12, 33–34.) Nationwide also requests a "money judgment according to proof." (*Id.* at 10, ¶ 3.)

Penn-Star initially removed this action pursuant to 28 U.S.C. § 1441(b). (Doc. 1 at 1–2, filed Oct. 26, 2023.) In its Notice of Removal, Penn-Star contended that removal was proper because: (1) Grimmway and Penaloza-Herrera "should be realigned as plaintiffs for jurisdictional purposes"; and (2) Nationwide fraudulently joined Grimmway and Penaloza-Herrera as defendants to this action. (*Id.* at 4–7.) Even at that time, as Penn-Star recognized in the Notice of Removal, "Nationwide, <u>concedes that it must defend Herrera and Grimmway under the terms of its policy</u> but seeks to pass that burden, and the burden of paying the first $1 million (Penn-Star's limit of insurance) in insurance proceeds towards a settlement or judgment, to Penn-Star under the theory that Penn-Star's policy affords the sole layer of primary insurance for the claims in *Ramirez*." (Doc. 1 at 3 (emphasis added).) Penn-Star underscored that as a result "Nationwide thus has no quarrel with Herrera or Grimmway, but rather with Penn-Star alone." (*Id.*; *see id.* at 3–4 (arguing Nationwide named Grimmway "despite making no allegations against [it], seeking no relief from [it] and failing to aver the existence of an actual controversy (a condition precedent

to declaratory relief) with [it]").)

Nationwide moved to remand. (Doc. 7.)[2] Nationwide explained its coverage position as follows:

> Nationwide contends that the Auto Exclusion does not apply to the accident at issue in the *Ramirez* suit because the tractor operated by Mr. Herrera was not an "auto" as defined by the Penn-Star Policy, and instead qualifies as "mobile equipment." [ECF No. 1-1, at p. 7, para. 20]. As such, in Nationwide's view the Penn-Star Policy affords primary insurance coverage for Grimmway and Herrera for the *Ramirez* suit, Penn-Star and not Nationwide must provide a defense to those insureds, and the Nationwide Policy affords coverage for those insureds on an excess basis only. [ECF No. 1-1, at p. 8, para. 22].
>
> However, with Penn-Star choosing to withdraw from defending both Grimmway and Mr. Herrera, Nationwide had no choice but to step in and provide a defense, which it has been providing since June of 2023. [ECF No. 1-1, at p. 5, para. 11].

(Doc. 7 at 5 (emphasis and footnotes removed).) Nationwide resisted removal on several grounds. First, it argued that naming the insured was proper because their rights would be impacted by the declaratory relief sought, citing *Insurance Co. of the State of Pennsylvania v. Gemini Insurance Co.*, *2014 WL 7407466*, *8, *6 (S.D. Cal. 2014), for the proposition that "Insureds whose rights were implicated in insurer's declaratory relief action were necessary parties under FRCP 19." (Doc. 7 at 6.) Nationwide elaborated:

> Nationwide seeks declaratory relief regarding the application of Penn-Star's Auto Exclusion, and specifically seeks a declaration that: (1) Penn-Star and not Nationwide owes Grimmway and Mr. Herrera an immediate defense against the *Ramirez* suit; and (2) Penn-Star must pay up to the first $1 million of indemnity coverage on their behalf. Both Grimmway and Mr. Herrera have a contractual relationship with Penn-Star, and an interest in the outcome of the coverage issues to be adjudicated. Moreover, if not named as defendants any ruling by the Court regarding coverage would not be binding on Grimmway and Mr. Herrera, which could lead to a later coverage action litigating the same issues. As such, both Grimmway and Mr. Herrera qualify as "any person interested" under Civil Code of Civil Procedure section 1060, and are "necessary parties" to this declaratory relief suit. As such, there was nothing improper about Nationwide naming them as defendants.

(Doc. 7 at 6.) Nationwide reiterated these points elsewhere in its remand motion:

---

[2] While the motion to remand was pending, Nationwide voluntarily dismissed Mr. Penaloza Herrera. (Doc. 15, filed January 4, 2024.)

> Nationwide is asking the Court to declare that it has no obligation to defend either [insured] against the *Ramirez* suit, and no obligation to indemnify either except on an excess basis. As such, both Mr. Herrera and Grimmway are directedly impacted by the declarations sought and proper defendants to those causes of action.

(*Id*. at 8–9.)

In opposition to remand, Penn-Star explained the legal underpinnings and limitations of Nationwide's "no-duty-to-defend theory":

> [T]he moving brief suggested Grimmway and Herrera are "necessary" defendants in this suit because if Nationwide wins it will mean "Penn-Star and not Nationwide owes … an immediate defense against the Ramirez suit." (Dkt. 7, 6:15-16, arguing Herrera and Grimmway are "necessary" parties.) To the extent [Nationwide's] reply implies a similar point opposing realignment, that Grimmway's and Herrera's right to a defense under Nationwide's policy will vanish upon a Nationwide victory here, the argument lacks merit. Nationwide's theory (*see* Dkt. 1-1, p. 8, ¶ 22) is premised on the "narrow exception" in the two insurers' "other insurance" clauses operating in a way that would make Nationwide an excess insurer and Penn-Star primary such that, as between those two insurers, Penn-Star alone owes the duty to defend their common insureds, Grimmway and Herrera. *Hartford Cas. Ins. Co. v. Travelers Indem. Co*., 110 Cal. App. 4th 710, 726 (2003). Courts permit this equitable outcome between insurers only when enforcing the clauses to make one insurer primary and the other excess will not leave "the insured without coverage" and will "not infringe on any right of the insured." *Id*. at 727.
>
> Because of that principle, Nationwide's no-duty-to-defend theory is a dispute with Penn-Star and no one else and legally cannot alter Grimmway's or Herrera's rights under Nationwide's policy. Grimmway and Herrera have no cognizable reason to care which insurer defends them. Both have every reason to want $2 million instead of $1 million in coverage for the *Ramirez* claims. Because the second $1 million cannot be available absent a judgment declaring Penn-Star's auto exclusion unenforceable, Grimmway and Herrera should be realigned as plaintiffs.

(Doc. 11 at 15.) In addition, Penn-Star argued that Nationwide's position is "nonsense" for another reason, namely that "Nationwide's claims against Penn-Star are equitable, inter-insurer claims that legally cannot alter Grimmway's or Herrera's contract rights under either insurer's policy. Nor would it make sense for Grimmway or Herrera to participate as defendants when their ultimate interests mirror plaintiff Nationwide's." (Doc. 11 at 16.) Penn-Star closed by underscoring that neither Grimmway nor Herrera "can be defendants to Nationwide's equitable theories against another insurer that advance their own substantive interests. Nor does Nationwide

have any contract-based theories of declaratory judgment to allege against Grimmway or Herrera. Hence, its complaint does not allege any and the remand motion identifies none." (Doc. 11 at 17.)

> Nationwide simply has no conceivable claim against either California "defendant." They are defendants in name only and, by inventing meritless theories to continue the charade, the remand motion corroborates that Nationwide engaged in "actual fraud in the pleading of jurisdictional facts" designed to defeat federal jurisdiction in an effort to avoid the reach of the Ninth Circuit's on-point 2022 *Zenith* decision. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009). Complete diversity exists.

(Doc. 11 at 17.)

In reply, Nationwide stood by its position that Grimmway and Herrera were "proper (if not necessary)" parties to Nationwide's declaratory relief claims against Penn-Star. (Doc. 13 at 2.) In support, (*id*.), Nationwide cited *General Insurance Co. of America v. Whitmore*, 235 Cal. App. 2d 670, 674 (1965), in which the California Court of Appeals held that injured third parties, while not necessary or indispensable to a dispute between insurance carriers, were nonetheless "proper parties" because they had "some interest in the subject of the action or the issues and it would be convenient to settle their rights in the same action."

Relatedly, in opposition to Nationwide's request in the original remand motion that the Court abstain under *Brillhart*, see infra at Part IV.C, Penn-Star made a related argument that Nationwide's prayer for money damages was independent from its declaratory relief claim and thus that *Brillhart*, which applies only to declaratory relief actions, did not apply. (See Doc. 11 at 19–22.) Penn-Star asserted that Nationwide was attempting to "shift an entire loss to Penn-Star through equitable subrogation" even though no such equitable subrogation claim was explicitly plea. (*Id*. at 20.) Nationwide's reply followed a similar pattern:

> Here, Grimmway and Herrera have a contractual relationship with both Penn-Star and Nationwide, and both have an interest in the outcome of the coverage issues to be resolved in this case. That includes, without limitation: (1) whether Nationwide or Penn-Star owes a duty to defend them in the Ramirez suit; and (2) whether the Penn-Star policy will afford them with an additional $1 million in indemnity coverage for this accident. Moreover, Grimmway clearly has an interest in having Penn-Star—not Nationwide—provide it with a defense and indemnity or this loss: specifically, a loss covered by the Penn-Star policy (issued to non-party Torres Farm Labor) would not impact Grimmway's loss history or future

> insurance premiums, whereas a loss covered by the Nationwide policy may. Further, as in State of Pennsylvania, the absence of Grimmway and Herrera from this suit could lead to inconsistent obligations, including the insureds not being bound by the Court's coverage determination. As such, there can be no dispute that they have "some interest in the subject of the action" or the issues in dispute, making them properly named defendants.
>
> Penn-Star argues for a contrary result by asserting that Nationwide is not *really* alleging claims for declaratory relief (in which the insureds are proper defendants), but something else, an "unstated" or "implied" cause of action for equitable subrogation, in which the insureds may not be proper parties. [ECF. No. 11, p. 11:18 – 12:28]. This distraction highlights what Penn-Star cannot (and does not attempt to) dispute: both insureds are proper (if not necessary parties) to Nationwide's *actual* causes of action for declaratory relief.

(Doc. 13 at 3–4.)

All of this, of course, left the seemingly separate question of whether Grimmway and Herrera should be realigned as plaintiffs. On the realignment issue Nationwide argued:

> There appears to be no Ninth Circuit case analyzing realignment in the context of an insurance declaratory relief action or in conjunction with a motion to remand, and Penn-Star has cited none. The Ninth Circuit uses the "primary purpose" test when evaluating parties' realignment. Courts look beyond the pleading to the actual interest of the parties concerning the subject matter of the suit and align those parties whose interest coincide concerning the primary matter in dispute. *Ace Prop. & Cas. Ins. Co. v. McKesson Corp.,* 2021 WL 908350, *5 (N.D. Cal. 2021).
>
> Here, the primary matter in dispute is whether it is Penn-Star or Nationwide who must defend Grimmway and Herrera, and provide the first $1 million in indemnity for any liabilities. Penn-Star argues that its Auto Exclusion precludes any defense or indemnity obligation. In contrast, Nationwide contends that it has no defense obligation or any indemnity obligation except in excess of $1 million. Given the unique nature of claims for declaratory relief, in which (as discussed above) the insureds are unquestionably proper defendants, and the absence of Ninth Circuit case law on point, Nationwide submits that the same analysis concerning fraudulent joinder should be applied in evaluating re-alignment. **Specifically, since both Grimmway and Mr. Herrera are proper defendants in this declaratory relief suit, they should not be "realigned" as plaintiffs**.

(Doc. 13 at 5.)

There the record stood when the Court issued its remand order. The Court reproduces here the part of its analysis most relevant to the present motion:

a. Principal Purpose of Lawsuit

In its Notice of Removal, Penn-Star suggests that the primary purpose of this lawsuit is "whether, as Nationwide claims, Penn-Star's policy affords coverage for the *Ramirez* lawsuit." (Doc. 1 at 6; *see also* Opp'n, Doc. 11 at 14.) Penn-Star requests the Court realign Penaloza-Herrera and Grimmway as plaintiffs in this case because, in Penn-Star's view, these defendants' interests more appropriately align with Nationwide's interests:

> If Nationwide loses, Penn-Star will be adjudged to owe nothing such that Herrera's and Grimmway's only protection against personal liability to the *Ramirez* plaintiffs will [be] the $1 million indemnity limit afforded by Nationwide's policy. (*See* Compl., ¶ 13.) If, on the other hand, Nationwide wins and Penn-Star is adjudged to cover the *Ramirez* claims, Grimmway and Herrera will potentially have up to $2 million in combined liability coverage from Penn-Star and Nationwide.

(Doc. 1 at 6 [ ]; *see also* Opp'n, Doc. 11 at 14, 15 ("*Of course* Grimmway and Herrera would prefer $2 million in liability coverage instead of $1 million. Their interest is an unconditional Nationwide victory.") (emphasis in original).)

**In *Continental Airlines, Inc. v. Goodyear Tire & Rubber Company*, 819 F.2d 1519, 1523–1524 (9th Cir. 1987), the Ninth Circuit acknowledged that though disputes between co-defendants may exist if liability is imposed, these disputes are "ancillary" to the "essential controversy," which was whether the plaintiff could recover against them at all. *Id.* The same logic applies to the instant matter.**

***

Other courts within this Circuit, including this District, have analyzed the principal purpose in similar circumstances. *See Ace Prop. and Cas. Ins. Co. v. McKesson Corp.*, 2021 WL 908350, at *6 (N.D. Cal. Mar. 10, 2021) ("ACE seeks a declaration of the Insurer Defendants' obligations, ***'if any,'*** to defend or indemnify McKesson[.] . . . The 'primary dispute' is ACE's duties to McKesson, and the Insurer Defendants' obligation, '*if any*,' are predicated on '*the extent* [to which] the court determines that ACE has any [coverage] obligations' to McKesson.") (emphases in original); *Am. Econ. Ins. Co. v. Aspen Way Enters., Inc.*, No. CV 14-09-BLG-SPW, 2014 WL 7461712, at *3 (D. Mont. Dec. 2, 2014) ("Also as in *A & S Mfg.*, the Plaintiff-Insurers' principal purpose of this lawsuit is avoiding liability to Aspen Way under their insurance contracts."); *see also Tres Cruzes Land & Cattle, LLC v. Scottsdale Ins. Co.*, No. 2:15-cv-00449-MCE-DAD, 2015 WL 6949888, at *5 (E.D. Cal. Nov. 10, 2015) ("[T]he primary dispute in both the Tres Cruzes and Trustee lawsuits is to obtain proceeds payable under the Scottsdale policy as well as damages flowing from Scottsdale's failure to pay such damages sooner.").

Nationwide frames the principal purpose of this lawsuit as one seeking a "judicial determination and declaration of rights, obligations and interests" regarding Nationwide and Penn-Star's "obligation[s] to GRIMMWAY [and HERRERA] in the *Ramirez* suit . . . and which insurer owes a duty to defend" them in *Ramirez*. (Doc. 1-1 at 9–10, ¶¶ 1–2). **Both Penn-Star and Nationwide deny that they are obligated to defend the parties in the *Ramirez* action. Penn-Star denies all liability, and Nationwide denies liability until after the first $1 million is expended in indemnity. (Doc. 13 at 5)**

Though Nationwide and Penn-Star dispute the application of Penn-Star's "Auto Exclusion," and Nationwide seeks to require Penn-Star to provide the first layer of insurance, these internal disputes are merely ancillary to the principal dispute in this case. **The primary issue is whether the insurers owe a duty to defend and indemnify Grimmway and Penaloza-Herrera. *Cf. U.S. Fidelity*, 48 F.3d at 134 ("If none, or only one, provided coverage, the question of the insurers' liability to each other would be moot. Only if two or more were liable to A & S, would the court have to allocate liability and costs."); *Emp'ers Ins.*, 942 F.2d at 866.**

b. Coinciding Interests

Penn-Star asks the Court to realign Penaloza-Herrera and Grimmway as co-plaintiffs with Nationwide because each defendant would rather be covered by both insurer's policy limits. (Doc. 1 at 6; Doc. 11 at 14, 15.) This theory misses the mark, because it focuses on the policy limits rather than the duties to the insureds. Moreover, the amount of each insurer's policy limits is not yet pertinent—it is simply "hypothetical until the insurers' liability is determined." *U.S. Fidelity*, 48 F.3d at 134; *Ace Prop. and Cas.*, 2021 WL 908350, at *6. In any event, "[r]ealignment may be required even if a diversity of interests exists on other issues," *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983), and "the fact that one defendant may benefit should plaintiff prevail against another defendant is not in and of itself sufficient to sustain realignment." *BDC Dev. Corp. v. N. Am. Capacity Ins. Co.*, No. CV 13-2170 FMO (FFMx), 2013 WL 12146122, at *2 (C.D. Cal. Aug. 20, 2013) (internal quotation marks and citation omitted).

**Because "[t]he dispute among the insurers is secondary to whether the insurers are liable to [Grimmway and Penaloza-Herrera]** and is hypothetical until the insurers' liability is determined," and because the "insurers share the primary goal of avoiding obligations to" these insureds, the Court realigns Nationwide and Penn-Star as plaintiffs, opposite to Grimmway and Penaloza-Herrera as defendants. *U.S. Fidelity*, 48 F.3d at 134; *see also id.* ("[A]ny disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify."); *Ace Prop. and Cas.*, 2021 WL 908350, at *6; *Tres Cruzes*, 2015 WL 6949888, at *5; *Am. Econ. Ins.*, 2014 WL 7461712, at *3; 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3607 (3d ed. 2024) ("A common fact pattern in recent cases has been a suit by an insurance company

> for a declaratory judgment in which its insured and other insurers with policies covering the insured are named as defendants. . . . When [the principal purpose] test is used[,] the insurers are aligned as plaintiffs[.]"). Accordingly, for purposes of the analysis of the Court's jurisdiction, the Court declines to realign Grimmway and Penaloza-Herrera Penn-Star as plaintiffs in this case. (Doc. 1-1 at ¶¶ 1–4.)

(Doc. 30 at 7–11.) As the emphasized language above demonstrates, the Court assumed Nationwide had some <u>actual</u> dispute with its insured Grimmway over whether it was obliged to defend or indemnify it. Based in part on that assumption, the Court ordered remand on September 26, 2024. (Doc. 30.)

**D. State Court Discovery**

In March 2025, after the case was remanded and Penn-Stars' demurrer was denied by the state court (*see* Doc. 31 at 5), Penn-Star served Nationwide and Grimmway with demands to inspect documents. (Doc. 32, Declaration of Daniel Katibah, ¶ 3, Exh. A (Doc. 32-1); ¶ 7, Exh. E (Doc. 32-5).) Nationwide and Grimmway served responsive documents on May 16, 2025 and May 22, 2025, respectively. (Doc. 32, ¶¶ 4, 7.) Penn-Star highlights several pre-litigation emails from those productions.

On August 23, 2023, Nationwide adjuster Nancy Gates emailed Grimmway Risk Manager Jimmy Weihe, stating:

> Jimmy-
>
> As we discussed yesterday, we have had coverage counsel review Penn-Star's coverage denial to Grimmway as an Addl Insured as required by its contract with Torres, as well as to its own policy holder, Torres Farm Labor Contractor and its employee who was driving Grimmway's tractor, Nereo Penaloza Herrera.
>
> Penn-Star withdrew coverage based on the Ninth Circuit decision entitled Penn-Star v. Zenith, which had essentially identical facts as occurred in the Ramirez accident.
>
> Coverage counsel (David Borovsky at BHC Law Group) has advised
>
> [four lines of redacted text]
>
> Consequently, he has recommended [nine lines of redacted text].
>
> As we discussed, if Grimmway is agreeable to be a named defendant in a complaint filed against Penn-Star, Nationwide will

> pay for the attorney to defend Grimmway & Answer on your behalf. Please consider this request and let me know whether Grimmway is agreeable to proceed as coverage counsel has recommended against Penn-Star.
>
> Thanks!
>
> Nancy Gates

(Doc. 32-3 (Katibah Decl., Exh. C) at 36-37 [Nationwide Bates Nos. 007717-007718].)

On September 19, 2023. Ms. Gates wrote to Mr. Weihe again:

> Hi Jimmy —
>
> Just a heads up that I'll be passing along your information as the Grimmway contact for coverage counsel, Dave Borovsky, to reach out to explain the need for this type of lawsuit against Penn-Star & what it entails before it is filed. He intends to reach out to Kim Oberrecht on behalf of the driver who we are defending to discuss this as well.
>
> We have otherwise approved for Mr. Borovsky to move forward as he's recommended [three lines of redacted text].
>
> Feel free to contact me if any questions or to discuss this further. Otherwise, you can expect that Dave will be in touch to discuss any questions or concerns that anyone there at Grimmway may have regarding this.
>
> Thanks!
>
> Nancy Gates

(*Id*., at 36 [Bates No. 007717].)

On October 2, 2023, Mr. Weihe wrote to Ms. Gates:

> This email is a follow-up to our discussion on Friday. Nationwide is planning on filing suit against Penn-Star to obtain a judgment to force coverage. **To avoid a diversity issue and avoid moving the case to Federal Court, Nationwide will need to include GEI as a defendant in the suit.** We want to use Severson to defend us in this action. They are panel counsel for Nationwide, and we have used them in the past. Because they are panel counsel and would be defending GEI against Nationwide, Severson would need a conflict waiver from Nationwide. Also, we would like to confirm that Nationwide will reimburse us our costs for defending this action, including if it goes up for appeal, which Nationwide counsel thinks it would. If Nationwide decides not to authorize our usage of Severson, we will use outside counsel, which will most likely cost considerably more.

Let me know what your thoughts are.

Thank you,

Jimmy Weihe

(*Id*. at 18 [Bates No. 007691] (emphasis added).)

Nationwide also produced an invoice from Grimmway's attorneys at the Severson Werson firm for work in October and November 2023, which contained the following entries:

| | |
|---|---|
| 10/03/23 | Correspond with client confirming discussions with plaintiff Nationwide about joint-plan of action for declaratory relief action |
| 10/10/23 | Call with Nationwide (NG) confirming no conflict and expectations for declaratory relief action |
| 10/10/23 | Correspond with Nationwide confirming waiver of potential conflict representing Grimmway |
| 10/12/23 | Call with plaintiff's counsel about service of complaint and plan of action |
| 10/16/23 | Correspond with plaintiff's counsel about complaint |
| 10/20/23 | Analyze complaint regarding potential response and sham defendant issue |
| 10/30/23 | Correspond with plaintiff's counsel about status of complaint and removal to federal court |
| 11/07/23 | Correspond with plaintiff's counsel and client about meet and confer meeting |
| 11/09/23 | Meet and confer call with client's general counsel and plaintiff's counsel about removal and client's responsive pleading. |

(Doc. 32-3 at 24–27 [Bates Nos. 007697-007700].)

On at least one occasion during this general timeframe, Grimmway's attorney forwarded correspondence <u>from Grimmway's co-defendant Penn-Star to Nationwide</u>. For example, on October 30, 2023, Penn-Star's counsel emailed Grimmway attorney Colin Murphy about Penn-Star's first notice of removal. (Doc. 32-3 at 4–5 [Bates Nos. 007466-007477].) In that email, Dan Katibah, Counsel for Penn-Star explained that, because he had not known Grimmway was served two weeks prior, Penn-Star's notice of removal had erroneously stated that no other defendant had been served. (*Id*.) Apparently under the impression that Grimmway did not wish to be sued and would concur with Penn-Star's position that Grimmway had been fraudulently joined, Mr.

Katibah asked Mr. Murphy to consent to removal. (*Id.*) Mr. Murphy instead forwarded that correspondence to Nationwide's lawyers. (*Id.* at 4.)[3]

In addition, on May 16, 2025, Nationwide served responses to interrogatories that, among other things, indicated: "To date, Nationwide has not sent a 'reservation of rights' letter to Grimmway concerning the *Ramirez* lawsuit" but argued that "by service of the complaint in this matter, Nationwide has reserved rights by advising its insureds and Penn-Star of its coverage position with respect to the *Ramirez* lawsuit, including the dispute over its obligations to defend and indemnify its insureds, as well as its claims to seek monetary recovery from Penn-Star." (Doc. 32-9 at 4.)

**E. Post Re-Removal Discovery**

Since re-removal on May 28, 2026, Penn-Star was able to depose Mr. Weihe, the former Grimmway Risk Manager, on July 24, 2025. (Doc. 45-1.) He was "the main contact at Grimmway with Nationwide to discuss the [underlying *Ramirez*] claim and to coordinate the claim" (*id.* at 43) and the "point of contact for this insurance lawsuit on behalf of Grimmway." (*Id.* at 58) In the five years that he worked at Grimmway, Mr. Weihe handled approximately "a hundred" cases against the company (*id.* at 51) but this case was the first his "career at Grimmway" where the plaintiff <u>suing Grimmway</u> offered to pay Grimmway's bills. (*Id.* at 51.) Mr. Weihe admitted that a plaintiff funding its adversary's defense is not "a standard arrangement in the litigation" and that Nationwide's offer to do so struck him as "peculiar." (*Id.* at 51–52.) However, when cross-examined at his deposition, Mr. Weihe clarified that this case was the only time he could recall when Grimmway was sued by its own insurance company. (Doc. 47 at 7.)

In March 2026, Nationwide deposed adjuster Nancy Gates, the sender of many of the emails discussed above. (Doc. 61-1 at 31–50.) She testified that "there were [not] any issues with coverage on our policy for" Grimmway because "based on the allegations and based on the facts and the evidence, as we knew it, there were not a basis to issue either a reservation of rights, at

[3] Penn-Star presents additional communications from the state court discovery which the Court finds unnecessary to discuss in detail here. For example, Penn-Star has referenced emails between Nationwide's and Grimmway's lawyers that Penn-Star describes as efforts to arrange the destruction of evidence. (Doc. 31 at 11.) Nationwide in turn describes those emails as an effort by Nationwide to claw back privileged information that was shared by Ms. Gates without authorization. (Doc. 34 at 19.)

that time, or any kind of coverage denial." (*Id.* at 40.)

When asked "if Nationwide has any plans to pursue recoupment from Herrera or from Grimmway of the money Nationwide spent defending them in the underlying lawsuit" Ms. Gates answered: "I don't believe so." (*Id.* at 43.) Counsel also asked if "Nationwide is intending to pursue Grimmway or Herrera in litigation to recover" the $850,000 Nationwide paid towards the Ramirez settlement, to which Ms. Gates responded that she did not "believe that [Nationwide] would be pursuing recovery against Grimmway or Herrera" for those funds. (*Id*. at 40-42.) When counsel asked Ms. Gates to confirm "that Nationwide has initiated this lawsuit against Penn-Star to force coverage for Herrera and Grimmway under Penn-Star's policy" she answered "Yes." (*Id*. at 44–45.)

### F. Resolution of the Ramirez Action and Supplemental Briefing

On January 14, 2026, Penn-Star notified the Court of the resolution of the Ramirez Action following settlement. (Doc. 51.) Torres Farm Labor was dismissed, with prejudice, on October 9, 2025. (*Id*. at 2.) Grimmway and Mr. Penaloza-Herrera were dismissed with prejudice on November 21, 2025. (*Id*.) The Court requested supplemental briefing on how the resolution impacts the realignment issue in this case. (Doc. 57), which the parties provided. (Docs. 61, 62.)

## IV. DISCUSSION[4]

### A. Timeliness of Removal

As mentioned, Nationwide contends that Penn-Star's second removal was untimely because it has been more than one year since this case was initiated in 2023. (Doc. 34 at 6); 28 U.S.C. § 1446(c)(1). Penn-Star contends that the "bad faith" exception to the 1-year deadline applies because Nationwide "has acted in bad faith in order to prevent [Penn-Star] from removing the action." (Doc. 31 at 3.) "Because 'the removing defendant has always borne the burden of establishing federal jurisdiction' . . . the defendant bears the burden of proving that the plaintiff acted in bad faith." *Lindquist v. Target Corp*., 2020 WL 789568, at *1 (N.D. Cal. Feb. 18, 2020)

---

[4] To expedite resolution of this motion, which has already been significantly delayed as a result of this Court's extraordinary caseload, the Court assumes that the reader has read and considered its prior remand order. (Doc. 30.) The Court discusses here only those issues that are new and/or essential to the disposition of the matter.

(quoting *Abrego Abrego v. The Dow Chem. Co*., 443 F.3d 676, 682-83 (9th Cir. 2006)); *see also McKenrick v. Evanston Ins. Co*., No. 5:24-CV-02493-SVW-SHK, 2025 WL 980147, at *2 (C.D. Cal. Apr. 1, 2025).

The Ninth Circuit has not articulated a standard for evaluating allegations of bad faith in the § 1446(c)(1) context, but district courts within the circuit generally have set a high bar for defendants "to demonstrate that a plaintiff acted in bad faith to prevent removal." *Kolova v. Allstate Ins. Co*., 438 F. Supp. 3d 1192, 1196 (W.D. Wash. 2020) (internal quotation marks and citation omitted). The statute itself offers an example, providing that a plaintiff acts in bad faith by "fail[ing] to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1446(c)(3)(B). Other "examples of bad faith include removal-defeating strategies such as fraudulently joining parties to destroy diversity or refraining to serve defendants until the passage of the one-year deadline." *Escalante v. Burlington Nat. Indem., Ltd*., No. 2:14-CV-7237-ODW, 2014 WL 6670002, at *3 (C.D. Cal. Nov. 24, 2014) (internal citations omitted); *Johnson v. Reliant Prop. Mgmt., Inc*., No. 2:23-CV-01817 KJM CKD, 2024 WL 81225, at *1 (E.D. Cal. Jan. 8, 2024) (noting the same and examining the record to determine if there was evidence of fraudulent joinder); s*ee also Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1261 (D.N.M. 2014) ("A plaintiff's 'bad faith' can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.").

"Determining whether a plaintiff has acted in bad faith to prevent removal necessarily involves looking into the plaintiff's subjective intent, as the text of section 1466(c)(1) strongly suggest[s] intentionality and purpose." *Mapes v. FCA US LLC*, No. 21-870, 2021 WL 3561245, at *3 (S.D. Cal. Aug. 12, 2021) (alteration in original) (internal quotation marks and citation omitted). Courts have considered both direct and circumstantial evidence of intent to evaluate bad faith. *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1262 (D.N.M. 2014); *see also Russo v. Stillwater Ins. Co.*, No. CV-19-04896-PHX-SMB, 2019 WL 4409971, at *2 (D. Ariz. Sept. 16,

2019). "As a part of that inquiry, courts have considered the timing of naming and dismissing the non-diverse defendant, the explanation given for dismissal, and whether the plaintiff actively litigated the case in 'any capacity' against a non-diverse defendant before dismissal." *Torres v. Honeywell, Inc*., No. 2:20-CV-10879-RGK-KS, 2021 WL 259439, at *3 (C.D. Cal. Jan. 25, 2021); *see also McKenrick*, No. 5:24-CV-02493-SVW-SHK, 2025 WL 980147, at *2 (C.D. Cal. Apr. 1, 2025); *Ranchod v. AIG Prop. Cas. Co*., No. C23-1642JLR, 2024 WL 489541, at *4 (W.D. Wash. Feb. 7, 2024).[5]

It is not entirely clear how the bad faith exception is meant to apply to the circumstances presented here. Some cases suggest that outside the specific statutory example of failing to disclose the amount in controversy, bad faith is limited to situations where the plaintiff joined and then later dismissed a non-diverse defendant. *See Heller v. Am. States Ins. Co*., No. CV 15-9771-DMG-(JPRx), 2016 WL 1170891, at *2 (C.D. Cal. Mar. 25, 2016) ("The bad faith exception . . . applies to 'plaintiffs who joined—and then, after one year, dismissed—defendants [whom] they could keep in the suit, but that they did not want to keep in the suit, except as removal spoilers.'" (quoting *Aguayo*, 59 F. Supp. 3d at 1266).

But the Court agrees with Penn-Star that no authority strictly limits the bad faith exception to situations where a non-diverse defendant has been dismissed. *See, e.g., Christensen Law Offices, LLC v. Christensen*, 2022 WL 777217 * 2 (9th Cir. 2022) (noting that insurer "reasonably argued" that retained co-defendants had been included as defendants in bad faith). As Penn-Star suggests, "to remove where, as here, the nondiverse defendant [allegedly] added in bad faith remains, the removing defendant must prove not just bad faith, but also that an exception to the complete-diversity and forum-defendant rules applies, like fraudulent joinder or realignment."

[5] Presumably because they believed they had no choice, the Parties expend a great deal of time trying to fit a square peg into a round hole by attempting to analyze the facts of this case within the factors set forth in bad faith cases that arose under very difference circumstances. The Court did not find these efforts to be terribly productive. As one example, Penn-Star attempted to prove bad faith by pointing out that Nationwide did not actively litigate against Grimmway. (*See* Doc. 31 at 15–16; Doc. 39 at 22.) But, as Nationwide points out, "as with any dispute over liability insurance coverage, the outcome will generally depend on: (1) the language of the Nationwide policy; (2) the language of the Penn-Star policy (and pertinent extrinsic evidence concerning how it should be interpreted) and (3) facts, pleadings, and discovery developed in the Ramirez suit." (Doc. 34 at 17.) Nonetheless, the Court agrees with Penn-Star that the "focus of the Court's 'bad faith' inquiry should be whether the evidence Penn-Star has adduced and discussed establishes bad faith. Nationwide evades or mischaracterizes that evidence at every turn for a reason." (Doc. 39 at 22.)

(Doc. 31 at 14 (citing *Aguayo*, 59 F. Supp. 3d at 1256.)

Here, the asserted bad faith is of a nature that does not appear to have been addressed in any case. The Court will assume for purposes of this discussion that Nationwide is correct that Grimmway was properly joined as a party to this case because Grimmway qualified as "any person interested" in the lawsuit Civil Code of Civil Procedure section 1060. (Doc. 7 at 6.)[6] That is not the end of the inquiry, however, because at least as important is whether Nationwide properly named Grimmway as a defendant, or whether, as Penn-Star argues, Grimmway should be a plaintiff. As the Court sees it, the key issue before it is whether Nationwide engaged in gamesmanship to keep the case in state court by obscuring its relationship to Grimmway, thereby confusing the adversarial lineup of the parties, which in turn contributed to this Court's denial of Penn-Star's request for realignment and the resulting denial of Penn-Stars's original motion to remand.

To determine how the bad faith standard applies in these uncharted waters, the Court returns to general principles. Broadly, the bad faith inquiry asks "whether the plaintiff engaged in strategic gamesmanship designed to keep the case in state court until the one-year deadline has

---

[6] The Court is not entirely sure this would withstand scrutiny of the cases cited by Nationwide, none of which appear to involve an insurer that did not reserve rights against its insured. The Court simply finds it unnecessary to include this assertion in its bad faith inquiry because despite Nationwide's conflation of the two issues (Doc. 13 at 5 ("Given the unique nature of claims for declaratory relief, in which (as discussed above) the insureds are unquestionably proper defendants, and the absence of Ninth Circuit case law on point, Nationwide submits that the same analysis concerning fraudulent joinder should be applied in evaluating re-alignment. Specifically, since both Grimmway and Mr. Herrera are proper defendants in this declaratory relief suit, they should not be 'realigned' as plaintiffs."), they are distinct. *Ace Prop. & Cas. Ins. Co. v. McKesson Corp*., No. 20-CV-09356-JSC, 2021 WL 908350, at *4 (N.D. Cal. Mar. 10, 2021) ("Realignment of the parties upon removal is not an 'exception' to the complete diversity requirement or an 'end-run around' the requirements for fraudulent joinder; rather, it is a consideration of how parties' interests align for jurisdictional purposes.").

Relatedly, some district courts considering cases where the diversity-destroying defendant was eventually dismissed have taken the position that bad faith can only exist if the diversity-destroying defendant was named *solely* to prevent removal to federal court. (Doc. 34 at 14); *see Heller*, 2016 WL 1170891, at *2 ("The bad faith exception, as distinct from the doctrine of fraudulent joinder, applies to "plaintiffs who joined—and then, after one year, dismissed—defendants [whom] they could keep in the suit, but that they did not want to keep in the suit, except as removal spoilers."); *see also Kalfsbeek*, 540 F. Supp. 3d at 943 (same); *Mapes*, 2021 WL 3561245, at *2 (same); *Heacock v. Rolling Frito-Lay Sales*, LP, No. C16-0829-JCC, 2016 WL 4009849, at *2 (W.D. Wash. July 27, 2016) (same). Here, Grimmway has not been dismissed, and Nationwide insists it is a proper party. But, as noted above, the presence of Grimmway as a party and their proper alignment are distinct issues. The Court's focus here is on whether there is evidence of bad faith related to Nationwide's representations related to realignment. Thus, the bad faith cases requiring proof that a party was named "solely to prevent removal" are essentially inapposite.

expired." *Torres*, 2021 WL 259439, at *3. In other situations, the Ninth Circuit has said that "[a] finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *In re Bos. Sci. Corp*., No. CV 15-6666 PA (PLAX), 2015 WL 5822582, at *4 (C.D. Cal. Sept. 29, 2015) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)). It is not enough that an argument lacks merit, because "forceful and effective representation often will call for innovative arguments" and therefore, a bad faith finding "should be reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Primus*, 115 F.3d at 649. Bad faith is a fact-based determination entrusted to the discretion of the district court so long as it is supported by the record. *See Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc*., 210 F.3d 1112, 1117–18(9th Cir. 2000) ("We will reverse a district court's factual findings as to whether an attorney acted recklessly or in bad faith only if they are clearly erroneous."); *United States v. Mark*, 742 F. App'x 315, 316 (9th Cir. 2018)("Bad faith implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will. [Movant] had the burden of establishing bad faith, and we will not reverse unless we have a firm conviction that the district court committed a clear error of judgment.") (cleaned up) (internal citations and quotation omitted).

Here, the communications revealed in discovery show a clear intent by Nationwide to include Grimmway in this action to avoid removal. Standing alone, that is not bad faith. As the *Aguayo* court explained:

> There is nothing wrong with plaintiffs having a preference for state court, nor is there anything inherently invidious or "bad faith" about using deliberate tactics to defeat federal jurisdiction. As masters of their complaints, plaintiffs are allowed to forego federal causes of action to defeat federal-question jurisdiction and to forego potentially recoverable damages to avoid meeting the amount-in-controversy requirement

59 F. Supp. 3d at 1273; *see also Kalfsbeek Charter v. FCA US, LLC*, 540 F. Supp. 3d 939, 943 (C.D. Cal. 2021) ("Although section 1446(c)(1) prevents a plaintiff from acting in bad faith to avoid federal jurisdiction, it is well established that the plaintiff is master of her complaint and

can plead to avoid federal jurisdiction.") (internal citation and quotation marks omitted).

However, Nationwide repeatedly argued to this Court that it should be aligned against Grimmway. The Court finds particularly noteworthy that Nationwide argued in its original remand motion as follows: "[I]t cannot be disputed that there is an actual controversy between Nationwide and each of the three defendants regarding Nationwide's obligations to its insureds under the Nationwide policy." (Doc. 7 at 9.) As noted above, Penn-Star, with the limited information it had at that time, argued in opposition that this made no sense because Nationwide could not as a matter of law prevail on its "excess-only" theory unless Grimmway would not be harmed by such a result. (Doc. 11 at 15.)

> Nationwide's theory (*see* Dkt. 1-1, p. 8, ¶ 22) is premised on the "narrow exception" in the two insurers' "other insurance" clauses operating in a way that would make Nationwide an excess insurer and Penn-Star primary such that, as between those two insurers, Penn-Star alone owes the duty to defend their common insureds, Grimmway and Herrera. *Hartford Cas. Ins. Co. v. Travelers Indem. Co*., 110 Cal. App. 4th 710, 726 (2003). Courts permit this equitable outcome between insurers only when enforcing the clauses to make one insurer primary and the other excess will not leave "the insured without coverage" and will "not infringe on any right of the insured." *Id*. at 727.
>
> Because of that principle, Nationwide's no-duty-to-defend theory is a dispute with Penn-Star and no one else and legally cannot alter Grimmway's or Herrera's rights under Nationwide's policy. Grimmway and Herrera have no cognizable reason to care which insurer defends them. Both have every reason to want $2 million instead of $1 million in coverage for the *Ramirez* claims.

(Doc. 11 at 15.)

In reply, Nationwide stood by its position that Grimmway and Herrera were "proper (if not necessary)" parties to Nationwide's declaratory relief claims against Penn-Star, (Doc. 13 at 2), and then doubled-down on its position that there was a "clear judicable controversy between Nationwide as plaintiff, and each of the parties who are defendants." (*Id*. at 4.) To understand why this assertion was so problematic, one needs to look closely at the Court's realignment rationale in its remand order. As the Court acknowledged therein, Grimmway certainly stands to benefit if this lawsuit resolves in Nationwide's favor. (Doc. 30 at 10.) Nonetheless, "the fact that one defendant may benefit should plaintiff prevail against another defendant is not in and of itself

sufficient to sustain realignment." (*Id*. (quoting *BDC Dev. Corp.*, 2013 WL 12146122, at *2 (C.D. Cal. Aug. 20, 2013) (internal quotation marks and citation omitted)).) Instead, relying on *U.S. Fidelity*, 48 F.3d at 134, the Court realigned Nationwide and Penn-Star as plaintiffs, opposite to Grimmway and Penaloza-Herrera as defendants. (Doc. 30 at 10.) *U.S. Fidelity* was critical to the Court's reasoning. There, the lead defendant, A & S Manufacturing Company, was the subject of an enforcement action related to environmental contamination at an A & S site. 48 F.3d at 132. A & S had contracted with several insurers for primary liability insurance and filed claims seeking coverage for the environmental contamination liability. *Id*. The plaintiff insurer filed suit against A & S and the other insurers, seeking a declaration of the parties' rights. *Id*. Each insurer denied liability to A & S and contended that if it were liable the other insurers would be liable to it under various theories of contribution. *Id*. Under these circumstances, where all the insurers denied liability, the primary dispute was whether the insurers were liable to A & S. *Id*. at 134. The Fourth Circuit concluded that "the dispute among the insurers was secondary to whether the insurers are liable to A & S and is hypothetical until the insurers' liability is determined. The potentially substantial, though not principal, controversies that plaintiff raises are subsumed in the primary issue of the insurers' liability to A & S. The insurers share the primary goal of avoiding obligations to A & S, and the district court properly realigned them as plaintiffs opposite the defendant A & S." *Id*. "Practicalities" supported the district court's reasoning because "[a] court trying the merits of [the] controversy would first have to decide whether the insurers were under any obligation to defend and indemnify A & S. If none, or only one, provided coverage, the question of the insurers' liability to each other would be moot." *Id*.

Applying *U.S. Fidelity*, the Court found that "the dispute among the insurers is secondary to whether the insurers are liable to Grimmway and Penaloza-Herrera," any such dispute "is hypothetical until the insurers' liability is determined," and "<u>the insurers share the primary goal of avoiding obligations to these insureds</u>." (Doc. 30 at 10 (emphases added).) With the benefit of the present record, the Court now sees why this analysis was incorrect. The primary dispute in this lawsuit concerns the application of the Auto Exclusion in the Penn-Star policy. Nationwide's own goal of evading any <u>primary</u> insurance duty to defend and indemnify Grimmway is not "shared"

with Penn-Star at all; it is instead entirely contingent on Nationwide successfully prosecuting its argument that Penn-Star's Auto Exclusion does not apply to the *Ramirez* Action. Unlike in *U.S. Fidelity*, where the insurers were all adverse to the insured on the issue of liability, and were adverse to one another only in relation to an issue (contribution) that was contingent upon any of them being liable to the insured, here the insurers are indisputably adverse to each other on the only real question of liability that is in dispute: whether the Penn-Star Auto Exclusion applies to the *Ramirez* Action. Crucially, the newly presented evidence makes it crystal clear that Nationwide does not dispute its obligations to Grimmway: it is the primary insurer responsible for coverage and defense if Penn-Star's policy is not triggered and it is the excess insurer only if the Penn-Star policy is triggered.

Nationwide's position that "there is an actual controversy between Nationwide and [Grimmway] regarding Nationwide's obligations to its insureds under the Nationwide policy" is entirely irreconcilable with the facts known to Nationwide at the time it moved to remand. The record now demonstrates there was no actual controversy between Nationwide and Grimmway. Nationwide did not reserve its rights and instead coordinated with Grimmway to name Grimmway as a defendant in this lawsuit to their mutual benefit. The Court concludes that Nationwide at the very least recklessly misrepresented the state of its relationship with Grimmway and that this contributed materially to the Court remanding the matter. Under these unusual circumstances, the Court finds that the plaintiff has acted in bad faith to prevent Penn-Star from *successfully* removing the action within the one-year deadline. Even though the removal statute is "strictly construed, and any doubt about the right of removal requires resolution in favor of remand," *Moore-Thomas*, 553 F.3d at 1244, the Court concludes that Penn-Star has met its burden here by presenting direct evidence that Nationwide had no actual controversy with Grimmway while at the same time was representing exactly the opposite to the Court.

In making this finding, the Court acknowledges that Penn-Star highlighted this issue in its opposition to the original motion to remand. (*See* Doc. 11 at 14–15.) As Nationwide points out, "[a] successive removal petition is permitted only upon a 'relevant change of circumstances'—that is, 'when subsequent pleadings or events reveal a new and different ground for removal.'"

*Reyes v. Dollar Tree Stores, Inc*., 781 F.3d 1185, 1188 (9th Cir. 2015) (quoting *Kirkbride v. Cont'l Cas. Co*., 933 F.2d 729, 732 (9th Cir. 1991)); *see also Arvizu v. Fertility Centers of Orange Cnty. Reprod. Partners Med. Grp*., No. 8:25-CV-00413-DOC-ADS, 2025 WL 917344, at *2 (C.D. Cal. Mar. 26, 2025). But, "successive removal based on the same grounds as the initial removal is proper so long as it is triggered by different support—newly discovered facts 'altering the circumstances bearing on jurisdiction.'" *Overrated Prods., Inc. v. Universal Music Grp*., 2019 WL 6729718 * 7 (C.D. Cal. 2019) (cleaned up). For the reasons discussed above, the Court concludes that the present removal is premised on newly discovered facts that have altered the circumstances bearing on jurisdiction.

### B. Realignment

Considering the clarified factual situation, and for the reasons set forth above in its discussion of *U.S. Fidelity*, the Court also sides with Penn-Star as to the alignment of the parties. The enhanced record demonstrates that the "essential controversy" here is the dispute between Nationwide and Penn-Star over whether Penn-Star's auto exclusion applies to the *Ramirez* suit, because there is no dispute between Nationwide and Grimmway over Nationwide's obligations. Thus, the Court orders Grimmway to be realigned as a plaintiff and Penn-Star to be realigned as a defendant. In so doing, there is complete diversity among the parties because Nationwide is a citizen of Iowa, Grimmway of California, and Penn-Star of Pennsylvania. (Doc. 1 at 5; Doc. 1-1 at 4, ¶¶ 1–2.)[7]

### C. *Brillhart*

Nationwide argues in the alternative that the Court should decline jurisdiction and remand this action pursuant to *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995). The Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. The statute provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." *Id*. (quoting 28 U.S.C. § 2201(a) (emphasis in

---

[7] The Court declines to examine in detail settlement of the *Ramirez* suit impacts this analysis because, if anything, it would only push the needle farther toward realigning the parties as Penn-Star requests.

original case, not original statute). However, the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right on the litigant." *Id*. at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co*., 344 U.S. 237, 241 (1952)).

*Wilton* reaffirmed the application of *Billhart*, 316 U.S. 491 (1942), to a declaratory judgment action:

> Over 50 years ago, in *Brillhart* . . . , this Court addressed circumstances virtually identical to those present in the case before us today. An insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy. The District Court dismissed the action in favor of a pending state garnishment proceedings, to which the insurer had been added as a defendant ... [T]his Court held that, "although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments (sic) Act, it was under no compulsion to exercise that jurisdiction." The Court explained that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." The question for a district court presented with a suit under the Declaratory Judgment Act, the Court found, is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.

*Wilton*, 515 U.S. at 282 (internal citations omitted).Thus, the Declaratory Judgment Act gives this Court "competence to make a declaration of rights; it [does] not impose a duty to do so." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir.1998) (en banc). This principle is referred to as the *Wilton/Brillhart* doctrine.

Here, Nationwide argued principally that *Brillhart* warranted remand of this action because "the questions in controversy can better be settled in Kern County Superior Court where the *Ramirez* suit is pending." (Doc. 34 at 27 (cleaned up).) Nationwide has not attempted to reframe this argument now that the Ramirez action has been resolved. The Court will not manufacture that argument for Nationwide, given that, for the most part, where courts "decline[] to exercise their jurisdiction over requests for a declaration of state law" it is "<u>because of a related state court proceeding</u>." *Emps. Reinsurance Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995), overruled on other grounds by *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998); *see also Beazley Underwriting, Ltd. v. Fitness Int'l, LLC*, 538 F. Supp. 3d 969, 972 (C.D. Cal.

2021)(discussing how a court has "broad discretion" to stay a declaratory judgment action "when relates state court proceedings are pending"). Thus, the Court will not exercise its discretion under *Brillhart* to remand this action.[8]

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS**:

(1) Nationwide's Motion to Remand (Doc. 34 ) is **DENIED**.

(2) Grimmway is realigned as a Plaintiff alongside Nationwide.

(3) Penn-Star is realigned as a defendant.

IT IS SO ORDERED.

Dated: September 28, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE

[8] Given this outcome, the Court also finds it unnecessary to resolve Penn-Star's alternative fraudulent joinder arguments.